**SEALED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

NHAN PHAM

CASE NO. 6:24-cr-250-JA-LHP
21 U.S.C. § 331(c)
21 U.S.C. § 331(k)
21 U.S.C. § 331(p)

## INDICTMENT

The Grand Jury charges:

### A. Introduction

At all times material to this Indictment:

1.  The United States Food and Drug Administration ("FDA") was an agency of the United States Government charged with the responsibility of protecting the health and safety of the public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, to ensure that, among other things, medical devices sold for use by or upon humans are safe and effective, and bear labeling containing accurate information and adequate directions for use. The FDA's responsibilities under the FDCA included regulating the manufacture, labeling, and distribution of devices introduced into interstate commerce.

2.  The FDCA defined a "device" as, among other things, "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is . . . intended for use in the diagnosis of disease or other conditions, or in the cure,

mitigation, treatment, or prevention of disease, in man or other animals, or intended to affect the structure or function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes." 21 U.S.C. § 321(h)(1).

3. The FDCA defined a "label" as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). "Labeling" was a broader term and was defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

4. The FDCA defined "interstate commerce" as (1) commerce between any State or Territory and any place outside thereof and (2) commerce within the District of Columbia or within any other territory not organized with a legislative body. 21 U.S.C. § 321(b).

5. Under the FDCA, every person upon first engaging in the manufacture, preparation, propagation, compounding, or processing of a device in any establishment which he owned or operated in any State was required to immediately register with the FDA such person's name, places of business, all such establishments owned or operated by such person, and a list of all devices which were being manufactured, prepared, propagated, compounded, or processed by him for commercial distribution which he had not been otherwise included in a list filed with

the FDA. 21 U.S.C. § 360. Such persons were also required to register that information with the FDA each year during the period beginning on October 1 and ending on December 31.

6. The terms "manufacture, preparation, propagation, compounding, or processing" included repackaging or otherwise changing the container, wrapper, or labeling of any device package in furtherance of the distribution of the device from the original place of manufacture to the person who made final delivery or sale to the ultimate consumer. 21 U.S.C. § 360(a)(1).

7. The FDA classified devices into one of three categories: Class I (lowest risk), Class II (moderate risk), and Class III (highest risk). 21 U.S.C. § 360c. A device's class was a factor in the type of regulatory controls to which it was subject and for any process it must complete to obtain FDA approval prior to marketing and introduction into interstate commerce.

8. Class III devices were generally subject to the most stringent regulatory control. Premarket approval ("PMA") by the FDA was the required process of scientific review and evaluation of data and specifications to ensure the safety and effectiveness of Class III devices. *See* 21 U.S.C. § 360e.

9. A Class III device generally could not be lawfully shipped in interstate commerce without a PMA. However, the FDCA provided an "investigational device exemption" ("IDE") from the general rule to allow a device to be shipped

3

such that investigators could test the device on human subjects. 21 U.S.C. § 360j(g).[1] The purpose of the exemption was "to encourage, to the extent consistent with the protection of public health and safety and with ethical standards, the discovery and development of useful devices intended for human use." 21 U.S.C. § 360j(g); 21 C.F.R. § 812.1(a).

10. Pursuant to the FDCA, any device that was not in commercial distribution before May 28, 1976, was automatically classified into Class III as a matter of law and required full premarket approval prior to being distributed within the United States. 21 U.S.C. §§ 360c(f)(1) and 360e(a). However, Class III devices could be reclassified into Class I or II by the written order of FDA (see 21 C.F.R. Part 860, Subpart C-Reclassification) or by a determination by FDA finding the device to be substantially equivalent to a legally marketed predicate device (referred to as "FDA clearance" or "510(k) clearance"). 21 U.S.C. § 360c(i).[2] Even if the device was within a type of device which has been classified in Class I or II,[3] if the device was intended for human use, was introduced or delivered for introduction

---

[1] To obtain and maintain such an exemption, however, sponsors and investigators had to satisfy the requirements of 21 U.S.C. § 360j(g) as well as the specific requirements found at 21 C.F.R. part 812, including, among other requirements, prohibitions on (i) promotion and marketing of the device; (ii) representations that the device is safe or effective for the purpose for which it is being investigated; and (iii) performing such investigations without informed consent from participants.

[2] As a part of the FDA clearance process, FDA determined whether "new" devices were substantially equivalent to predicate devices by means of the premarket notification procedures set out in 21 U.S.C. § 360(k). *See also* 21 CFR Part 807, Subpart E. In general, manufacturers were required to submit a 510(k) premarket notification for any Class I or II device that was not exempt from the premarket notification requirements and was being introduced into commercial distribution for the first time. *See* 21 C.F.R. § 807.81(a)(1).

[3] For example, as relevant here, through a de novo classification and creation of a new classification regulation under 21 U.S.C. § 360c(f)(2). See Device Classification Under Section 513(f)(2)(De Novo) (fda.gov).

into interstate commerce for commercial distribution after May 28, 1976, and had not been found substantially equivalent to another device within such type, it was a Class III device. *See* 21 U.S.C. § 360c(f)(1)(A).

11. Thus, a device classified as Class III was required under 21 U.S.C. § 360e(a)(2) to have an FDA approved application for PMA before the device could be distributed in interstate commerce. However, a new device could also be lawfully distributed in interstate commerce if it was substantially equivalent to a predicate device, the manufacturer filed a 510(k) premarket notification to the FDA, as required by 21 U.S.C. § 360(k) and 21 C.F.R. § 807.81(a)(1), and the manufacturer obtained a 510(k) clearance from the FDA.

12. A device was adulterated if, among other things, it was a Class III device pursuant to 21 U.S.C. § 360c(f) that did not have either an approved PMA application in effect (under 21 U.S.C. § 360e(a)) or an approved IDE application (under 21 U.S.C. § 360j(g)). 21 U.S.C. § 351(f)(1)(B).

13. A device was misbranded if, among other things:

    a. it was manufactured, prepared, propagated, compounded, or processed in an establishment not duly registered under 21 U.S.C. § 360(j) (21 U.S.C. § 352(o)); or

    b. its labeling was false or misleading in any particular (21 U.S.C. § 352(a)).

14. The following acts or causing thereof were violations of the FDCA:

5

  a. the receipt in interstate commerce of any adulterated or misbranded device and the delivery or proffered delivery thereof for pay or otherwise (21 U.S.C. §§ 331(c), 333(a));

  b. doing any act with respect to a device while it was being held for sale, after it was shipped in interstate commerce, that resulted in the device being adulterated or misbranded (21 U.S.C. §§ 331(k), 333(a)); and

  c. failing to register as a device manufacturer in accordance with 21 U.S.C. § 360 (21 U.S.C. §§ 331(p), 333(a)).

15. Polydimethylsiloxane, which is commonly referred to as silicone, or any compound or mixture containing silicone, when intended to be injected into a human for body contouring, or more specifically, into the human buttocks, in order to affect the size, contour, or structure of that portion of the human body for aesthetic purposes, was classified as a Class III device within the meaning of the FDCA and required FDA approval or clearance to be lawfully marketed in the United States. The injection of silicone into the human body in this manner, regardless of whether such injection was dispensed and administered by a licensed practitioner, required an FDA-approved PMA. There were no approved PMAs or 510(k) premarket notifications and/or clearances for the injection of silicone into the human body.[4]

---

[4] The only injectable silicone devices approved by the FDA were for a specific use inside the eye.

## COUNT ONE
### (Receipt in Interstate Commerce and Proffered Delivery of an Adulterated Device)

1.  Paragraphs One through Fifteen of this Indictment are hereby realleged and incorporated as though fully set forth herein.

2.  On or about October 10, 2019, in the Middle District of Florida, and elsewhere, the defendant,

NHAN PHAM,

with intent to defraud and mislead, did receive in interstate commerce, and cause the receipt in interstate commerce, of an adulterated device, namely polydimethylsiloxane fluid, a/k/a, liquid silicone, which was adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B), in that it was a Class III device under 21 U.S.C. § 360c(f) that lacked the pre-market approval required by 21 U.S.C. § 360e, and did deliver and proffer delivery of said device for pay and otherwise.

All in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

## COUNT TWO
### (Misbranding a Device After Shipment in Interstate Commerce)

1.  Paragraphs One through Fifteen of this Indictment are hereby realleged and incorporated as though fully set forth herein.

2.  On or about October 10, 2019, in the Middle District of Florida, and elsewhere, the defendant,

NHAN PHAM,

with intent to defraud and mislead, did and caused to be done acts to a device, namely polydimethylsiloxane fluid, a/k/a, liquid silicone, while the device was held for sale, after components of the device had been shipped in interstate commerce, which acts resulted in the device being misbranded within the meaning of 21 U.S.C. § 352(a)(1), in that the labeling of the device was false and misleading in any particular, and within the meaning of 21 U.S.C. § 352(o), in that the device was manufactured, prepared, propagated, compounded, and processed in an establishment not duly registered with the FDA as required.

All in violation of 21 U.S.C. §§ 331(k) and 333(a)(2).

## COUNT THREE
### (Failure to Register as a Device Manufacturer)

1. Paragraphs One through Fifteen of this Indictment are hereby realleged and incorporated as though fully set forth herein.

2. On or about October 10, 2019, in the Middle District of Florida and elsewhere, the defendant,

**NHAN PHAM,**

with intent to defraud and mislead, did engage in the manufacturing, preparing, propagating, compounding, and processing of a device in an establishment he owned and operated in the State of Florida without registering with the FDA as a device manufacturer as required under 21 U.S.C. § 360.

All in violation of 21 U.S.C. §§ 331(p) and 333(a)(2).

## **FORFEITURE**

1.   The allegations contained in Counts One through Three are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853, 21 U.S.C. § 334, and 28 U.S.C. § 2461(c).

2.   Upon conviction of a violation of 21 U.S.C. § 331, the defendant shall forfeit to the United States of America, pursuant to: 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense; 21 U.S.C. § 853, any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of such violation, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation; and 21 U.S.C. § 334 and 28 U.S.C. § 2461(c), any adulterated or misbranded device.

3.   If any of the property described above, as a result of any acts or omissions of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property, which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).



ROGER B. HANDBERG
United States Attorney

By: _____
Diane S. Hu
Assistant United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

## NHAN PHAM

## INDICTMENT

Violations:

21 U.S.C. §§ 331(c), (k), (p) and 333(a)(2)



Filed in open court this 2nd day of October, 2024.



_____
Clerk

Bail   $_____

GPO 863 525